**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ACCESS MEDIQUIP, LLC                                                                                    PLAINTIFF

v.                                        No. 4:11 CV00695 JLH

ST. VINCENT INFIRMARY MEDICAL
CENTER, a/k/a ST. VINCENT HEALTH SYSTEM                                        DEFENDANT

**OPINION AND ORDER**

Access Mediquip, LLC, commenced this action against St. Vincent Infirmary Medical Center, alleging breach of contract, violation of the Arkansas Deceptive Trade Practices Act, and unjust enrichment. St. Vincent has moved for summary judgment on all three counts. For reasons that will be explained, St. Vincent's motion is granted on Access's claim of a violation of the Arkansas Deceptive Trade Practices Act but denied on the breach of contract and unjust-enrichment claims.

**I.**

On March 1, 2009, Access and St. Vincent entered into a contract pursuant to which Access would provide medical equipment to St. Vincent for use in medical procedures. Under the contract, St. Vincent would forward a physician's request for medical equipment to Access, and Access would decide whether to accept the request. *See* Contract art. 1.4 ("Request shall mean a request made by a physician to [St. Vincent] to procure, precertify, bill and collect for Medical implant procedure to be performed by the physician at [St. Vincent]."); *id.* art. 1.1 ("Accepted Request shall mean a Request forwarded by [St. Vincent] to Access and accepted by Access, as reflected in an e-mail acceptance notification to [St. Vincent]."). If Access accepted a request, Access would provide St. Vincent with medical equipment that Access purchased from a manufacturer, and St. Vincent would provide the equipment to the physician for use in procedures. *See id.* art. 3.1. Access was not required to accept a request from St. Vincent. *See id.* arts. 3.1, 6.6.

The contract provided for billing to third-party payors. *See id.* art. 1.2 ("Payor shall mean any entity, including, but not limited to, employers, unions, associations, insurers, health maintenance organizations and managed care organizations, responsible for paying the cost of Medical Equipment."). For an Accepted Request, Access had "the sole right to bill to and collect from Payors . . . for all Medical Equipment used in a Procedure." *Id.* art. 3.2. If, however, a payor paid St. Vincent in any amount for the medical equipment that Access furnished, "[St. Vincent] shall forward such payment to Access." *Id.* art. 2.5.

From January 23, 2009, through December 23, 2009, Access purchased medical implants in a total amount of $652,514.30 and provided them to St. Vincent for medical procedures. The payors for the medical procedures were Arkansas BlueCross BlueShield and Health Advantage (collectively, "Blue Cross"). Instead of paying Access for the medical implants, however, Blue Cross paid St. Vincent for both the surgical procedures and the implants, as part of Blue Cross's diagnostic-related-grouping ("DRG") payment. "DRG payment(s) to St Vincent covered all services, items, equipment, etc., including implants, that are used, whether specifically listed on St. Vincent's claims or not." Document #19-2 (Affidavit of Ina Ward, Director of Medical Audit and Review Services Division for Arkansas BlueCross BlueShield).

Access alleges that St. Vincent breached the contract by failing to pay Access for the implants after St. Vincent received payment from Blue Cross; that St. Vincent engaged in false, unconscionable, or deceptive acts under the Arkansas Deceptive Trade Practices Act; and that St. Vincent was unjustly enriched at Access's expense. The complaint alleges that Access should recover from St. Vincent more than $1,000,000 for these implants.

The parties agree that Arkansas law governs the issues. *See* Contract art. 7.4.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

Access's breach of contract claim is based on Article 2.5 of the contract, which states, "In the event [Blue Cross] makes any payment of any amount to [St. Vincent] for Medical Equipment furnished for a Procedure, [St. Vincent] shall forward such payment to Access . . . ."

St. Vincent contends that it is entitled to summary judgment on Access's breach-of-contract

3

claim based on two separate arguments. St. Vincent's first argument is that its responsibilities under this portion of the contract would arise only if Blue Cross paid St. Vincent for the implants and that "Access has not presented any proof that Blue Cross/Blue Shield issued a payment *for the medical equipment*." Document #16. Access responded with an affidavit of Ina Ward, the Director of Medical Audit and Review Services Division for Arkansas BlueCross BlueShield, which states that Blue Cross's payment to St. Vincent "would have included the costs of implants or any other devices, supplies, equipment or any other materials" used in the surgical procedures. Document #19-2. Because Ina Ward's affidavit specifically states that Blue Cross paid St. Vincent for the implants, a genuine issue of material fact exists regarding whether Blue Cross made a payment to St. Vincent for the implants.

St. Vincent's second argument is that Access materially breached the contract by failing to obtain precertification for Blue Cross to pay separately for the implants, thereby discharging St. Vincent from its obligations under the contract. This argument was raised for the first time in St. Vincent's reply brief. As a general rule, courts do not address arguments received for the first time in a reply brief. *Akeyo v. O'Hanlon*, 75 F.3d 370, 374 n.2 (8th Cir. 1996); *Cunningham v. City of Benton*, No. 4:05CV1130 JLH, 2007 WL 707343, at *4 (E.D. Ark. March 5, 2007); *see also Adams v. City of Manchester*, No. 4:11CV1309 TCM, 2012 WL 3242078, at *4 (E.D. Mo. Aug. 7, 2012) ("'It is well settled that [the Court] do[es] not consider[] arguments raised for the first time in a reply brief.'" (quoting *K.C. 1987 Ltd. P'ship v. Reede Mfg.*, 472 F.3d 1009, 1018 n.2 (8th Cir. 2007))). The instant case illustrates why, as a general rule, courts do not address arguments raised for the first time in a reply brief.

First, it is unclear whether the contract requires Access to precertify or gives it the right to

4

do so. St. Vincent argues that once Access accepts a request for medical equipment, as Access did here, Access must obtain precertification from the payor so that Access can bill the payor separately for the medical equipment (while the facility bills the payor for the procedure). This argument may have merit, as the contract's definition of "request" includes a request to precertify, *see* Contract art. 1.4 ("<u>Request</u> shall mean a request made by a physician to Facility to procure, precertify, bill and collect for Medical Equipment for an implant procedure to be performed by the physician at Facility."), and Access must accept such a request for the process of providing and using medical equipment to move forward, *see id.* art. 1.1 ("<u>Accepted Request</u> shall mean a Request forwarded by Facility to Access and accepted by Access, as reflected in an e-mail acceptance notification to Facility."). The contract does not, however, define the term "precertify." In the context, it could mean obtaining advance approval from the third-party payor for the procedure to be done, or it could mean obtaining advance approval to bill separately for the implants.

Assuming that "precertification" means obtaining prior approval for separate payment for the implants, the provisions suggesting Access is required to precertify are tempered by other provisions indicating that precertification might not always occur. "'[T]he intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement.'" *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 371, 255 S.W.3d 424, 429 (2007) (quoting *Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006)). Article 3.2, for example, states that "Access shall have the sole *right* to bill and collect from Payors . . . for all Medical Equipment used in a Procedure." Contract art. 3.2 (emphasis added). If the contract does not mandate billing and collecting from a payor, which is also part of a "request," *see id.* art. 1.4, then why would the contract mandate precertification – the process through which separate billing

and collecting take place? Further, Article 2.5 includes a contingency plan for instances in which precertification and separate billing and collecting do not take place: "In the event a Payor makes any payment of any amount to [St. Vincent] for Medical Equipment furnished for a Procedure, [St. Vincent] shall forward such payment to Access . . . ." *Id.* art. 2.5. These provisions suggest that precertification might not always occur.

Moreover, not every breach of contract discharges the non-breaching party from its obligations; only a material breach does so. *See TXO Prod. Corp. v. Page Farms, Inc.*, 287 Ark. 304, 307, 698 S.W.2d 791, 793 (1985); *Vereen v. Hargrove*, 80 Ark. App. 385, 391, 96 S.W.3d 762, 765 (2003). "A material breach is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party." *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 2012 WL 285967, at *21 (citing *Roberts Contracting Co., Inc. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1, 8). An important factor in determining whether a breach is material is the extent to which the non-breaching party obtains the contractual benefits that party reasonably anticipated. *See TXO Prod. Corp.*, 287 Ark. at 308, 698 S.W.2d at 793; *Vereen*, 80 Ark. App. at 391-92, 96 S.W.3d at 765. Here, the benefit that St. Vincent sought under the contract was to obtain medical devices for surgical procedures, and it obtained them. Arguably, lack of precertification did not substantially defeat the purpose of the contract for St. Vincent. *See Spann*, 2012 Ark. App. 107, 2012 WL 285967, at *21. Thus, the lack of precertification, if it was a breach, arguably was not a material breach.

Because the argument that Access committed the first breach was raised for the first time in a reply brief, Access has not had the opportunity to address these issues – whether the contract required it to obtain precertification; what "precertification" entails; and, if the contract required

Access to obtain precertification as a condition to payment, whether Access's failure to do so was a material breach. These issues are not free from doubt, and the Court declines to decide them.[1]

Summary judgment is denied on Access's breach-of-contract claim.

## IV.

St. Vincent also argues that it is entitled to summary judgment on Access's claim that St. Vincent violated the Arkansas Deceptive Trade Practices Act (ADTPA). The ADTPA makes it unlawful to "[e]ngag[e] in any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10) (West 2012). "An 'unconscionable' act is an act that 'affront[s] the sense of justice, decency, or reasonableness.'" *Baptist Health v. Murphy*, 365 Ark. 115, 128 n.6, 226 S.W.3d 800, 811 n.6 (2006) (quoting *Black's Law Dictionary* 1561 (8th ed. 2004)). To prove that a defendant engaged in a false or deceptive act or practice, a plaintiff must at minimum show "a specific misrepresentation, a fraudulent statement, or a purposeful pattern and practice of deceit." *In re Bateman*, 435 B.R. 600, 610 (Bankr. E.D. Ark. 2010).

St. Vincent first argues that a breach of contract is not a sufficient basis for bringing an ADTPA claim. That argument is correct. "[A] plaintiff may not transform a breach of contract action into a tort claim by alleging the breach was motivated by malice. The breach itself simply is not a tort." *Quinn Cos., Inc. v. Herring-Marathon Grp., Inc.*, 299 Ark. 431, 432, 773 S.W.2d 94, 94 (1989).

In response, Access argues that St. Vincent not only breached the contract but also engaged

---

[1] There is also an issue of whether St. Vincent's argument that its duty under the contract is discharged due to a material breach by Access is an affirmative defense that must be pled. *See* Fed. R. Civ. P. 8(c). Again, because St. Vincent first asserted the argument in its reply, Access has not briefed this issue.

in false, unconscionable, or deceptive conduct. First, Access contends that St. Vincent deceived Access about Access's ability to receive payment from Blue Cross. Access's evidence for this allegation is that prior to entering into the contract, St. Vincent had entered into agreements with Blue Cross whereby Blue Cross would pay St. Vincent using the global DRG method. *See* Document #19-5. Yet Access has presented no evidence that St. Vincent knew that Blue Cross would not pay Access separately and that St. Vincent affirmatively concealed that information; instead, Access argues that St. Vincent "must have known" this information and that St. Vincent's "silence on the issue" is the deception. Document #20. Under Arkansas law, a party may have a duty to disclose if the parties have a relationship of trust or confidence, the parties are unequal in condition or in access to information, or some other special circumstances are present. *Holiday Inn Franchising, Inc. v. Hotel Associates, Inc.*, 2011 Ark. App. 147, 2011 WL 657222, at *6. Here, the parties had no special relationship of trust and confidence, nor did St. Vincent have access to information that was unavailable to Access. Indeed, the contract either required or permitted Access to determine whether Blue Cross would bill Access and St. Vincent separately. *See* Contract, arts. 1.1, 1.4, 3.2. Access had a preauthorization team set up for this precise purpose. *See* Document #14-2 (Deposition of Shannon Gamage).

Next, Access argues that St. Vincent falsely stated that it did not receive payments for the implants. Access cites the deposition of Peter Banko, President and CEO of St. Vincent, who testified in his deposition that St. Vincent was not paid for the implants, whereas the affidavit of Ina Ward states that the payments by Blue Cross to St. Vincent included payment for the implants. While Banko stated that Blue Cross did not pay St. Vincent for the implants, he explained that his answer reflected the fact that St. Vincent is paid a case rate and is "not paid for individual things that happen

during the course of care for a patient." Document #19-3. In any event, Banko's testimony is after the fact; it does not show that St. Vincent made any false statements to Access before execution of the contract or before Access purchased any of the implants for which payment is in issue. The excerpts from the transcript of Banko's deposition filed by Access in response to St. Vincent's motion for summary judgment include no evidence that St. Vincent knowingly misrepresented or concealed any information from Access.[2]

Because Access has not shown that St. Vincent engaged in a false, unconscionable, or deceptive act under the ADTPA, summary judgment for St. Vincent will be granted on Access's ADTPA claim.

## V.

Finally, St. Vincent argues that it is entitled to summary judgment on Access's unjust-enrichment claim. Unjust enrichment is an equitable doctrine based on the notion that a person should not become unjustly enriched at the expense of another and should be required to make restitution for the unjust enrichment received. *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 2011 WL 1422897, at *21; *Pro-Comp. Mgmt., Inc. v. R.K. Enters.*, 366 Ark. 463, 469, 237 S.W.3d 20, 24 (2006). "[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *Campbell*, 2011 Ark. 157, 2011 WL 1422897, at *21.

St. Vincent argues that, because this is a breach-of-contract action, Access cannot also allege unjust enrichment. Access, however, alleges unjust enrichment in the alternative – an issue to be

---

[2] Access cites pages 18 and 24 of Banko's deposition, but page 24 is not part of the record before the Court.

decided only if the finder of fact decides that the contract does not address St. Vincent's enrichment at Access's expense. Pleading unjust enrichment as an alternative to a breach-of-contract claim is allowed in appropriate circumstances under Arkansas law. *See, e.g.*, *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir. 1999); *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603, 605-06 (1994); 1 Howard W. Brill, *Arkansas Law of Damages* § 31:2 (5th ed. 2004).

While the general rule is that "[t]here can be no 'unjust enrichment' in contract cases," *Lowell Perkins Agency, Inc. v. Jacobs*, 250 Ark. 952, 958, 469 S.W.2d 89, 92 (1971), numerous exceptions to this rule exist. If, for instance, the contract was rescinded, the contract was discharged by frustration of purpose or impossibility, or the parties made a fundamental mistake about something in the contract, a party may seek recovery on a theory of unjust enrichment. *See Friends of Children, Inc.*, 46 Ark. App. at 61, 876 S.W.2d at 605 (holding that an unjust-enrichment claim was not barred where the parties had effectively rescinded their contract). In determining what the general rule means and whether it applies, the rule's purpose is instructive:

> "The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for. . . . When the reason for the rule ceases, the rule itself ceases to apply. . . . Indeed, it would be a gross injustice to . . . apply woodenly the technical rule [that a party to an express contract is not allowed to proceed on an unjust-enrichment theory]."

*Campbell*, 2011 Ark. 157, 2011 WL 1422897, at *23 (quoting *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999)). Thus, that the parties entered into a contract does not necessarily foreclose an unjust-enrichment claim. *Id.* When a contract is void or does not provide an answer to or fully address the issue at hand, a party may assert unjust enrichment. *Id.*

(citing 1 Howard W. Brill, *supra*).[3]

Access claims unjust enrichment only if the contract does not provide an answer to or fully address the issue at hand: whether St. Vincent can retain the benefits of receiving and using the implants without paying Access for them. The finder of fact may conclude that the contract is void or does not address this issue. Under St. Vincent's defense to the breach-of-contract claim, for instance, when Access failed to precertify that Blue Cross would pay separately for the implants and the procedure, the contract called for the process to stop. *See* Document #22 ("If Access does not obtain this pre-certification, then the 'process stops' and Access has no obligation to accept the request."). Thus, under St. Vincent's own theory, the contract would not address what happened after this alleged breach, namely that St. Vincent continued to receive and use implants from Access while also receiving payment from Blue Cross for the implants that Access had purchased. Because

---

[3] According to the newly-released *Restatement (Third) of Restitution and Unjust Enrichment*, the majority view in the United States is that a plaintiff can recover the value of contractual performance through an unjust-enrichment claim even if the plaintiff is not entitled to enforce the contract by an action for damages or specific performance:
> The plaintiff may lack a contract claim because the agreement of the parties was invalid, illegal, or unenforceable from the outset (§§ 31-33); because although initially valid it has been avoided, subsequent to the plaintiff's performance (§ 34); because the defendant demanded, and the plaintiff supplied, a performance for which the defendant has neither paid nor promised compensation (§ 35); or because the plaintiff himself is the party in breach (§ 36). Claims of this kind are logically part of the law of restitution, not contract, because they supply a remedy based on the defendant's unjust enrichment in cases where contract law explicitly denies a claim.

Restatement (Third) of Restitution and Unjust Enrichment pt. II, ch. 4, introductory note (2011); *see also* Robert Stevens, *When and Why Does Unjustified Enrichment Justify the Recognition of Proprietary Rights?*, 92 B.U. L. Rev. 919, 919 (2012) ("A Restatement's central purpose is not to explain why the law is as it is, but rather to restate the law in as clear and coherent a manner as possible."). *But see* Ernest J. Weinrib, *The Structure of Unjustness*, 92 B.U. L. Rev. 1067, 1079 (2012) ("Despite the outstanding accomplishment of Andrew Kull and his colleagues in the American Law Institute in drawing up the *Restatement (Third) of Restitution and Unjust Enrichment*, unjust enrichment is still the least developed area of private law.").

11

the finder of fact could conclude that the contract is void or does not cover the issue, the contract's mere existence does not necessarily preclude Access's unjust-enrichment claim.

St. Vincent also argues that Access's unjust-enrichment claim fails because Access did not have a reasonable expectation that St. Vincent would pay Access for the medical implants Access provided to St. Vincent. "Courts . . . will only imply a promise to pay for services where they were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of their payment by the party beneficiary." *Dews v. Halliburton Indus.*, 288 Ark. 532, 537, 708 S.W.2d 67, 69 (1986). In determining whether a reasonable expectation of payment exists, courts look to whether the performing party rendered a service that the benefitting party accepted and used. *See id.* ("'Where a party has in good faith rendered a service, not illegal or contrary to public policy, and the other party has accepted and used the service, the former may recover.'" (quoting *Dunn v. Phoenix Vill., Inc.*, 213 F. Supp. 936, 952 (W.D. Ark. 1963)).

Access has produced evidence that it had a reasonable expectation of payment from St. Vincent. Access provided implants to St. Vincent that St. Vincent accepted and used. While St. Vincent contends that Access only had a reasonable expectation of payment from Blue Cross, the parties were aware of circumstances in which Blue Cross would pay St. Vincent and St. Vincent would then pay Access. *See* Contract art. 2.5 ("In the event [Blue Cross] makes any payment of any amount to [St. Vincent] for Medical Equipment furnished for a Procedure, [St. Vincent] shall forward such payment to Access . . . ."). Access is alleging such a circumstance here – that Blue Cross paid St. Vincent for the implants Access furnished for St. Vincent.

Further, while Arkansas courts have not ruled specifically on this point, the *Restatement (Third) of Restitution and Unjust Enrichment* states that if a third party "makes a payment to the

defendant to which (as between claimant and defendant) the claimant has a better legal or equitable right, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 48 (2011). This follows from the more general principle that restitution should be made where it is just and equitable to do so. *See Pro-Comp Mgmt.*, 366 Ark. At 469, 237 S.W.2d at 24. A reasonable jury might find that Access has a better legal or equitable right to the money Blue Cross paid St. Vincent for the implants than does St. Vincent because St. Vincent not only benefitted from the receipt and use of the implants without paying for them, it also received payment from Blue Cross for those same implants.

For these reasons, St. Vincent is not entitled to summary judgment on its unjust-enrichment claim.

## CONCLUSION

For the reasons stated above, St. Vincent's motion for summary judgment is DENIED as to Count I (breach of contract) and Count III (unjust enrichment) of the complaint and GRANTED as to Count II (Arkansas Deceptive Trade Practices Act) of the complaint. Document #14.

IT IS SO ORDERED this 21st day of September, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE